HARVEY AND WIFE, Appellants, v. WICKHAM *et al.*, Respondents.

1. Where in a suit commenced by attachment there is a personal service upon the defendant, and a general judgment rendered against him, such judgment and a sale on execution under it are not rendered void by the fact that the affidavit upon which the attachment issued may have been defective.

2. No entry upon or actual possession of the wife's land after a descent cast is necessary to entitle the husband to curtesy. (Reaume v. Chambers, 22 Mo. 36, affirmed.)

3. The act of March 5th, 1849, (Sess. Acts, 1849, p. 67,) exempting certain property of the wife from execution for certain debts and liabilities of the husband, does not apply to debts contracted before its passage. (Cunningham v. Gray, 20 Mo. 170, affirmed.)

4. *Quere*: Whether, under said act, the estate of the husband in his wife's land, acquired by virtue of the marriage, can be sold under execution for the payment of his debts. (Schneider v. Staihr, 20 Mo. 269, *as to this point questioned.*)

## *Appeal from St. Louis Land Court.*

This was an action brought by Joseph H. Harvey and Louisa Harvey, his wife, to recover possession of certain lots in the town of Bremen. The plaintiffs claimed possession in right of the wife as one of the heirs at law of Nicholas N. Destrehan, who died seized of the lots in controversy, June 16th, 1848. The lots in controversy were allotted to Mrs. Harvey in a partition suit, as her portion. The report of the commissioners making the allotment was confirmed December 16th, 1851.

Defendant, Wickham, under whom the other defendant held as tenant, in his answer claimed a right to the possession by virtue of a deed from the sheriff of St. Louis county to himself, dated December 10th, 1852.

Upon the trial, plaintiffs proved a derivation of title in fee from the said Nicholas N. Destrehan, to the plaintiff, Mrs. Harvey; the marriage of plaintiffs in 1846, and the birth of issue prior to the death of N. N. Destrehan, in June, 1848; the proceedings in partition, showing the allotment of the lots in controversy to the plaintiff, Mrs. Harvey.

Defendants then offered in evidence a transcript of the record of the proceedings in a suit instituted by attachment in the St. Louis Court of Common Pleas, wherein one J. W. Flint was plaintiff, and J. H. Harvey, plaintiff in this action, was defendant. The suit was upon two promissory notes, one dated December 9th, 1845, payable in thirty days, and the other, December 31st, 1845, payable on demand. In this suit, wherein all the interest of the said J. H. Harvey in the lots in question was levied on under the attachment, there was per-

sonal service had upon the said Harvey, and a general judgment was rendered against him, September 24th, 1852 ; under which an execution issued, and was levied upon the interest of the said Harvey in the lots in controversy.  This interest was sold, and defendant, Wickham, became the purchaser, and obtained a deed from the sheriff conveying to said Wickham all the interest of the said J. H. Harvey in the lots in controversy.

The plaintiffs objected to the admission of the transcript, on the ground, *first*, that the *affidavit* upon which the attachment issued was insufficient to authorize the issuing of the attachment; and *secondly*, that the property in question, being the property of the wife in her own right, was not subject to levy and sale for the payment of the husband's *debts*, contracted before the marriage and before the wife became entitled to, or came into possession of, said property.  The objection was overruled, and the transcript admitted.

Plaintiffs then asked the following instructions : " 1. If the jury believe from the evidence, that the property in question was owned by Nicholas N. Destrehan, in his life-time, and descended to Louisa Harvey, as heir of said Destrehan, at the time of his decease in 1848, and no possession of the same was taken by the said Harvey or his wife until the partition of the same in December, 1851, then said Jos. H. Harvey had no interest or title in said property prior to that time, subject to levy and sale under execution against him alone, for the satisfaction of any debts created prior to the marriage of said Harvey and wife."  " 2. If the jury believe from the evidence, that the said Joseph H. Harvey and wife, and Joseph W. Flint were all residents of the state of Louisiana at the time the notes were given, upon which the judgment of said Flint against said Harvey, used in evidence in this case, was had, then said Flint was not protected by the laws of the state of Missouri before said suit was brought in St. Louis county, Missouri, in said suit of said Flint against said Harvey."  These instructions were refused by the court, and exceptions were duly taken by plaintiff.

The following instructions, asked by defendants, were given

by the court : " 1. The proceedings in partition vested the fee of the premises in the plaintiffs, and if J. H. Harvey had issue of his wife Louisa, and also had possession of said premises during coverture, the plaintiffs are not entitled to recover. " " 2. If the jury find that the debt upon which the judgment forming the basis of the sheriff's deed, read in evidence, was created prior to the 5th of March, 1849, the act of that date can not affect it, and the interest of Harvey in his wife's property in question was liable to be taken in execution and sold to satisfy said debts. "

The jury rendered a verdict for defendants, and judgment was accordingly given for them. Plaintiffs appealed.

*C. C. McLure*, for appellants.

*Wickham & Snead*, for respondents.

SCOTT, Judge, delivered the opinion of the court.

1. As there was personal service on the defendant, Harvey, in the suit of Flint against him, and a general judgment, and as the execution was founded on that judgment, we can not perceive the force of the objection growing out of the alleged defect in the affidavit on which the attachment was sued out, which was the original process in that action. The proceedings in the suit referred to, including the levy and sale under the execution, do not rely for a support on the attachment, but on the personal service of the writ, and the general judgment following. The fact that the lands had been attached in the suit did not restrain the sheriff from levying on them by virtue of the execution under the general judgment. The mere recital in the sheriff's deed that the lands thereby conveyed had been attached in the suit, is a mere matter of description, and does not show that the sheriff relied for authority in making the sale on the attachment. Both the judgment and the execution show the contrary. (R. C. 1845, tit. Attachment, art. 1, § 11, 59, p. 136, 145.)

2. This court, in the case of Reaume v. Chambers, (22 Mo. 36,) held that after a descent cast no entry or actual pos-

session was necessary in order to entitle a husband to curtesy in his wife's land.

3. The prohibition against laws impairing the obligation of contracts is found in the constitution of the United States. The obligation to perform a contract is coeval with the undertaking to perform it. It originates with the contract itself ; operates anterior to the time of performance. The second instruction asked by the plaintiff was, that if Harvey and wife and J. W. Flint were all residents of the state of Louisiana at the time the notes were given upon which the judgment of said Flint against said Harvey, used in evidence in this case, was had, then said Flint was not protected by the laws of the state of Missouri before said suit was brought in St. Louis county, Missouri, in said suit of said Flint against said Harvey. If this instruction is understood, it seems to convey the idea that the laws of a state have no extra-territorial validity. We held, in the case of Gray v. Cunningham, (20 Mo. 170,) that the act of March 5th, 1849, exempting certain property of married women from execution for the debts of their husbands, did not apply to debts contracted before its passage. The restriction against laws impairing the obligation of contracts being found in the constitution of the United States, if a creditor, who resides in a state, is protected from the operation of a law which injuriously affects him, it would be difficult to give a reason why a creditor, residing out of the state, is not also protected. The restriction was designed more for the protection of non-residents than residents. It would be much more reasonable that a state should pass laws impairing the obligation of contracts of her own citizens than of the contracts of those who are not subject to her laws. But if the law was only designed for residents, how do Harvey and his wife seek protection under it ? If it does not protect Flint because he is a non-resident, why should it protect Harvey, who is also a non-resident ? It is obvious that the whole argument, drawn from the want of extra-territorial operation of laws, if there is any thing in it, is much stronger against Harvey than against Flint. But there

can be no doubt on this subject under the constitution of the United States.

4. Notwithstanding the remark in the case of Schneider v. Staihr, (20 Mo. 271,) it may well be questioned whether, under the act of March 5, 1849, the husband's estate in his wife's land, by virtue of the marriage, can be sold under execution for the payment of his debts. But that question does not arise here, as the debt, on which the judgment and execution are founded, was in existence before the passage of the act. With the concurrence of the other judges, the judgment will be affirmed.